# No. 17-1084

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

JAMES B. GOODMAN,

*Plaintiff-Appellant*,

v.

SMART MODULAR TECHNOLOGIES, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the Southern District of Texas, Case No. 4:14-cv-01380

## BRIEF OF DEFENDANT-APPELLEE SMART MODULAR TECHNOLOGIES, INC.

Timothy Caine
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2231
tcaine@kslaw.com

Michael F. Heafey
*Counsel of Record*
KING & SPALDING LLP
601 S California Avenue
Palo Alto, CA 94034
Telephone: (650) 422-6719
mheafey@kslaw.com

*Counsel for Defendant-Appellee*

March 17, 2017

# CERTIFICATE OF INTEREST

Counsel for Defendant-Appellee SMART Modular Technologies, Inc. certifies the following:

1. The full name of every party represented by me is SMART Modular Technologies, Inc.

2. The name of the real party in interest is SMART Modular Technologies, Inc.

3. SMART Modular Technologies, Inc. (California) is a wholly owned subsidiary of SMART Modular Technologies (DE), Inc. (Delaware), which is a wholly owned subsidiary of SMART Modular Technologies (DH), Inc. (Cayman Islands), which is a wholly owned subsidiary of SMART Modular Technologies (Global), Inc. (Cayman Islands), which is a wholly owned subsidiary of SMART Worldwide Holdings, Inc. (Cayman Islands), which is a wholly owned subsidiary of Saleen Intermediate Holdings, Inc. (Cayman Islands) which is a wholly owned subsidiary of SMART Global Holdings, Inc. (Cayman Islands).

   No publically held company owns 10% or more of stock in the above entities.

4. The names of all firms and the partners or associates that appeared for the parties now represented by me in the trial court or that are expected to appear in this Court are:

   King & Spalding LLP: Michael F. Heafey; Adam M. Conrad (no longer with the firm); Timothy H. Caine; Daryl L. Joseffer; Anup Shah (no longer with the firm); Christopher Carnaval (no longer with the firm)

March 17, 2017 /s/ Michael F. Heafey

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ v

INTRODUCTION ........ 1

STATEMENT OF THE ISSUE ........ 3

STATEMENT OF THE CASE ........ 3

SUMMARY OF ARGUMENT ........ 5

LEGAL BACKGROUND ........ 6

ARGUMENT ........ 9

I. The District Court Properly Construed The Terms Of The Unambiguous Settlement Term Sheet ........ 9

A. The Court Correctly Interpreted "accused products" ........ 10

B. The Court Properly Considered The Evidence ........ 11

C. Goodman's Interpretation Is Unreasonable ........ 13

1. Goodman's Interpretation Would Render The Clause Meaningless ........ 14

2. Products Accused of Indirect Infringement Are "Accused Products" ........ 15

3. Goodman's Interpretation Is Inconsistent With The Facts ........ 17

II. The District Court Correctly Determined the Contract Was Unambiguous ........ 18

CONCLUSION ........ 20

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

### Cases

*Balandran v. Safeco Ins. Co. of Am.*,
972 S.W.2d 738 (Tex. 1998) .......... 12

*Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,
940 S.W.2d 587 (Tex. 1996) .......... passim

*DaimlerChrysler Motors Co., LLC v. Manuel*,
362 S.W.3d 160 (Tex. App. 2012) .......... 7, 10

*Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*,
294 S.W.3d 164 (Tex. 2009) .......... 7, 10

*El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*,
389 S.W.3d 802 (Tex. 2012) .......... 8, 18, 19

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*,
22 S.W.3d 831 (Tex. 2000) .......... 9

*Harbor Ventures, Inc. v. Dalton*,
No. 03-10-00690-CV, 2012 WL 1810205 (Tex. App. May 18, 2012) ... 12

*Heritage Res., Inc. v. NationsBank*,
939 S.W.2d 118 (Tex. 1996) .......... 7

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (5th Cir. 2012) .......... 16

*In re D. Wilson Constr. Co.*,
196 S.W.3d 774 (Tex. 2006) .......... 18

*Int'l Turbine Servs., Inc. v. VASP Brazilian Arlines*,
278 F.3d 494 (5th Cir. 2002) .......... 14, 20

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
341 S.W.3d 323 (Tex. 2011) .......... 14, 20

*J.M. Davidson, Inc. v. Webster*,
128 S.W.3d 223 (Tex. 2003) .......... 8, 18

*Lucent Tech., Inc. v. Gateway, Inc., et al.*,
580 F.3d 1301 (5th Cir. 2009) ........ 16

*Mid-S. Towing Co. v. Har-Win, Inc.*,
733 F.2d 386 (5th Cir. 1984) ........ 7

*Novamedix, Ltd. v. NDM Acquisition Corp.*,
166 F.3d 1177 (Fed.Cir. 1999) ........ 6

*NuStar Energy, L.P. v. Diamond Offshore Co.*,
402 S.W.3d 461 (Tex. App. 2013) ........ 8, 19

*Ricoh Co., Ltd. V. Quanta Computer Inc.*,
550 F.3d 1325 (Fed. Cir. 2008) ........ 17

*Sadler Clinic Ass'n, P.A. v. Hart*,
403 S.W.3d 891 (Tex. App. 2013) ........ 14, 20

*Sanofi-Aventis v. Apotex Inc.*,
659 F.3d 1171 (Fed. Cir. 2011) ........ 6

*StarCom Commc'ns, LLC v. Phonetec, LP*,
No. 11-07-00305-CV, 2009 WL 1653059
(Tex. App. June 11, 2009) ........ 7, 10

*Tessera, Inc. v. ITC*,
646 F.3d 1357 (5th Cir. 2011) ........ 16

*Waterfowl Ltd. Liab. Co. v. United States*,
473 F.3d 135 (5th Cir. 2006) ........ 6

*XTO Energy Inc. v. Smith Prod. Inc.*,
282 S.W.3d 672 (Tex. App. 2009) ........ 8, 9, 12, 18

**Statutes**

35 U.S.C. § 271 ........ 16

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Defendant-Appellee SMART states that:

(a) No appellate court has heard an appeal from the proceeding in this case; and

(b) There are no related cases.

# INTRODUCTION

SMART replies to Goodman's appeal from the Southern District of Texas Court's decision interpreting the Parties' Settlement Term Sheet that settled Goodman's claims of infringement of U.S. Patent No. 6,243,315 (the "'315 Patent").

In the proceedings below, the Parties settled their disputes according to the terms of the executed Settlement Term Sheet. Despite agreeing to the settlement terms, Goodman has since challenged several of the clauses, though only one clause is challenged in this appeal. Specifically, Goodman challenges the district court's interpretation of "accused products" as recited in the following clause:

> Goodman shall stipulate that all accused products do not infringe his U.S. Patent No. 6,243,315;

Appx2 (hereinafter, the Accused Products Clause).

Goodman makes several arguments on appeal, though none are persuasive. First, Goodman contends that SMART's DDR2, DDR3, and DDR4 products are not the "accused" products despite being the focus of his infringement theory. Goodman argues that he never formally identified SMART's DDR2, DDR3, and DDR4 products as "accused products" and he argues that products accused of indirect infringement

are legally incapable of being "accused products." Neither of these arguments are persuasive as they are contradicted by the facts of the case and unsupported by law.

Second, Goodman argues that the District Court erred by considering evidence, including Goodman's pleadings and contentions, because that was outside "the four corners" of the document. Goodman Br. at 2. This argument also fails because the District Court construed the term to its plain meaning and the District Court was permitted to consider evidence concerning the circumstances at the time of execution.

Third, Goodman argues that the District Court should have determined that the Accused Products Clause was ambiguous because there are conflicting interpretations. This argument is meritless because a contract is only ambiguous if both interpretations are reasonable and the District Court determined that Goodman's argument was not reasonable. Moreover, even if the Accused Products Clause was ambiguous, the District Court correctly found in favor of SMART because SMART's interpretation is consistent with the facts and relevant contract law.

## STATEMENT OF THE ISSUE

1. Whether the District Court properly determined that the Settlement Term Sheet was unambiguous and that the "accused products" are SMART's DDR2, DDR3, and DDR4 products.

2. Whether the District Court should have determined that the Settlement Term Sheet was ambiguous and should have interpreted it in favor of Goodman despite the District Court finding his proposed interpretation unreasonable.

## STATEMENT OF THE CASE

Goodman appeals the District Court's repeated determination that the Settlement Term Sheet was unambiguous and the "accused products" are SMART's DDR2, DDR3, and DDR4 products.

The '315 Patent claims a computer memory system that controls memory devices (i.e. DRAM), wherein certain memory devices can be isolated and placed into self-refresh mode. Goodman contends that the asserted claims are essential to the JEDEC standards for computer memory. In response to Goodman's complaint, SMART counterclaimed for declaratory judgments of noninfringement and invalidity, filed an *inter partes* review, and filed a Rule 11 motion based on Goodman's lack of pre-trial investigation.

Following the close of discovery, the District Court mandated that the parties attend mediation. After the parties agreed to a first mediator, Goodman refused to sign the mediator's engagement letter so the District Court appointed Judge Ward (ret.). At Judge Ward's mediation, the parties agreed to settle the case as expressed in the Settlement Term Sheet. At a high level, SMART agreed to drop its Rule 11 claim, dismiss its counterclaims, and dismiss its instituted *inter partes* review in exchange for Goodman dismissing the complaint, granting SMART a fully paid up license, and stipulating that "the accused products" did not infringe the '315 Patent. Notably, the Parties agreed that SMART would pay Goodman no monetary compensation.

Subsequently, Goodman challenged various aspects of the agreement and the District Court, after multiple motions, ultimately concluded that the "accused products" were SMART's DDR2, DDR3, and DDR4 products. Goodman appeals the District Court's Amended Memorandum and Opinion. Appx1–9.

## SUMMARY OF ARGUMENT

Appellant Goodman's appeal of the interpretation of the Settlement Term Sheet's Accused Products Clause can be broken down into two main issues:

1. Goodman argues that if the Settlement Term Sheet was unambiguous, then the District Court should not have relied on evidence outside the four corners of the settlement term sheet and should have construed the contract in favor of Goodman. Goodman's argument fails for three reasons. First, the District Court correctly construed the terms of the Settlement Term Sheet consistent with Texas contract law. Second, the District Court did not err by considering evidence concerning the circumstances and knowledge of the parties at the time of execution, including Goodman's pleadings and contentions. Third, the District Court should not have construed the Settlement Term Sheet in favor of Goodman because Goodman's interpretation is unreasonable as it would render the Accused Products Clause meaningless, Goodman's argument that the products are not accused because he now only alleges indirect infringement is illogical

and not supported by law, and it is inconsistent with the facts of the case.

2. Goodman argues that if the Settlement Term Sheet is ambiguous, then the District Court should interpret it according to the "applicable law" - consistent with Goodman's interpretation. Goodman's argument fails because Goodman has not satisfied his burden to show the Settlement Term Sheet is ambiguous as he has not shown that the Accused Products Clause is susceptible to two reasonable interpretations.

## LEGAL BACKGROUND

"Because the interpretation of a settlement agreement is not an issue unique to patent law, we apply the law of the appropriate regional circuit." *Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1178 (Fed. Cir. 2011) (citing *Novamedix, Ltd. v. NDM Acquisition Corp.*, 166 F.3d 1177, 1180 (Fed.Cir. 1999)). The Fifth Circuit reviews settlement agreement interpretations *de novo*. *Waterfowl Ltd. Liab. Co. v. United States*, 473 F.3d 135, 141 (5th Cir. 2006).

Settlement agreements involving federal law claims are considered under federal law. Appx3 (citing *Mid-S. Towing Co. v. Har-*

*Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984)). While settlement agreements are contracts under federal law, the federal case law on contracts is limited, so courts may rely on state contract law cases. Appx4 (citation omitted).

In Texas, contracts terms are given their "plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy Midstream Servs., Ltd. P'ship. v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009); *StarCom Commc'ns, LLC v. Phonetec, LP*, No. 11-07-00305-CV, 2009 WL 1653059, at *2 (Tex. App. June 11, 2009)( "Contract terms are given their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense.")(citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); see also *DaimlerChrysler Motors Co., LLC v. Manuel*, 362 S.W.3d 160, 179 (Tex. App. 2012)("Because the agreements do not define the terms 'actual damages' or 'consequential damages,' we presume that the parties intended their ordinary meanings.").

"If the contract is subject to more than one reasonable interpretation after applying the pertinent rules of contract

construction, then the contract is ambiguous and there is a fact issue regarding the parties' intent." *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App. 2013)(citing *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)). "A contract is not ambiguous simply because the parties advance conflicting interpretations." *NuStar*, 402 S.W.3d at 466 (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

"In determining whether the language of a contract is ambiguous, we look to the contract as a whole, in light of the circumstances present when the contract was executed." *XTO Energy Inc. v. Smith Prod. Inc.*, 282 S.W.3d 672, 683 (Tex. App. 2009), cause dismissed (Sept. 3, 2010). A Court "examine[s] the words of the contract, and considering the business activity to be served, determine[s] whether both proffered interpretations are reasonable." *Id.* "[A]lthough parol evidence of the parties' intent is not admissible to create an ambiguity … the contract may be read in light of the surrounding circumstances to determine whether an ambiguity exists. ... Such circumstances include 'the

commonly understood meaning in the industry of a specialized term, which may be proven by extrinsic evidence such as expert testimony or reference material.'" *Id.* (citations omitted). Notably, courts can consider the knowledge of the parties at the time of the contract. *Columbia*, 940 S.W.2d at 591. Courts may also consider documents pertaining to the same transaction. *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000).

## ARGUMENT

### I. The District Court Properly Construed The Terms Of The Unambiguous Settlement Term Sheet

Appellant Goodman argues that if the Accused Products Clause was unambiguous, then the District Court should not have relied on evidence outside the four corners of the Settlement Term Sheet and that the District Court otherwise misconstrued "accused products." Goodman's arguments are meritless because the District Court properly interpreted "accused products" to its plain meaning, the District Court properly considered the evidence, including Goodman's pleadings, and Goodman's interpretation is unreasonable.

### A. The Court Correctly Interpreted "accused products"

The District Court appropriately interpreted "accused products" to mean "the products that are accused of infringing the patent" because it is the plain meaning of the term and there is no evidence that the parties intended a different meaning. Appx28.

In Texas, contracts terms are given their "plain and ordinary meaning unless the instrument indicates the parties intended a different meaning." *Dynegy*, 294 S.W.3d at 168; *StarCom,*, 2009 WL 1653059 at *2; *DaimlerChrysler*, 362 S.W.3d at 179. Here, the District Court determined that there was no evidence suggesting that the Parties intended a different meaning and therefore gave the term "accused products" its plain meaning – "the products that are accused of infringing the patent." Appx28. In fact, Goodman offered no evidence from the Settlement Term Sheet indicating that that parties intended to give "accused products" anything besides its plain meaning.

Moreover, as the District Court recognized, the facts of the case only support one construction of "accused products": SMART's DDR2, DDR3, and DDR4 products. Appx5–7. In fact, the District Court noted that Goodman repeatedly accuses SMART's DDR2, DDR3, and DDR4

products in the operative complaint. Appx5–6.[1] Throughout this litigation, Goodman has focused his infringement theory on SMART's DDR2, DDR3, and DDR4 products.

Thus, not only did the District Court properly conclude that "accused products" means "the products that are accused of infringing the patent" because it is the plain meaning of the term and there is no evidence the parties intended to give the term a different meaning, but it also comports with Goodman's accusations throughout the case.

**B. The Court Properly Considered The Evidence**

Goodman argues that the District Court erred by considering evidence outside "the four corners of the document." Goodman Br. at 2. This argument is meritless because the District Court did not look outside the four corners of the document to construe the term and because the District Court was permitted to consider the circumstances at the time of the contract which includes the Parties' knowledge and other documents related to the transaction.

---

[1] SMART also identified many other instances where Goodman accused SMART's DDR2, DDR3, and DDR4 products in its briefs below. *See* Appx1921–1927 (SMART Mot. to Enforce Settlement and for Costs).

Texas courts have repeatedly stated that in construing an agreement, the courts "are to examine all parts of the contract and the circumstances surrounding the formulation of the contract." *Columbia*, 940 S.W.2d at 591 (citations omitted); *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998). This includes "the commonly understood meaning in the industry of a specialized term" or the parties' knowledge at the time of the contract. *XCO Prod. Co.*, 194 S.W.3d at 627–28; *Columbia*, 940 S.W.2d at 591.

In *Columbia*, for example, the court considered the parties knowledge of impending deregulation. *Id.* There, the contract included a pricing provision that was tied to the market price of gas. *Id.* The Texas Supreme Court recognized that both parties "knew that a huge volume of gas would be deregulated" at the time of the contract and that knowledge informed the parties understanding of the clause. *Id.*

Similarly, in *Harbor Ventures*, the court considered the circumstances of a residential community to interpret a restrictive covenant clause. *Harbor Ventures, Inc. v. Dalton*, No. 03-10-00690-CV, 2012 WL 1810205, at *5 (Tex. App. May 18, 2012).

Here, as discussed above, the District Court interpreted "accused products" to its plain meaning without resorting to separate evidence:

> There can be no question that the **plain meaning** of the term "accused products" in a patent case is the products that are accused of infringing the patent.

Appx28 (emphasis added). In applying that construction to the facts at hand, the District Court looked at the "the circumstances surrounding the formulation of the contract." *Columbia*, 940 S.W.2d at 591. In this case, the "circumstances surrounding the formulation of the contract" were the Parties' knowledge at the time of the contract and the documents related to transaction. Specifically, the District Court considered the Parties' knowledge of what products had been accused throughout the case and the complaint which the Settlement Term Sheet settled. Appx5–7, Appx28–29. Thus, even if the District Court had considered evidence outside the four corners of the document to the extent Goodman contends, the District Court was permitted to do so.

### C. Goodman's Interpretation Is Unreasonable

Even if Goodman could somehow show that the District Court erred in its analysis, the District Court still came to the correct conclusion as Goodman's interpretation is unreasonable.

### 1. Goodman's Interpretation Would Render The Clause Meaningless

Even if Goodman could show that the District Court somehow erred, his construction is unreasonable because it would render the Accused Products Clause meaningless.

Under Texas contract law, "courts must examine and consider the entire writing and **give effect to all provisions such that none are rendered meaningless**." *Int'l Turbine Servs., Inc. v. VASP Brazilian Arlines*, 278 F.3d 494, 497 (5th Cir. 2002) (emphasis added); *Sadler Clinic Ass'n, P.A. v. Hart*, 403 S.W.3d 891, 895 (Tex. App. 2013) ("The entire contract is examined in an effort to harmonize and give effect to all the provisions so that none will be rendered meaningless") (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011)).

Accordingly, Goodman's interpretation is unreasonable because it would render the agreed term meaningless. Specifically, if the Parties intended for Goodman to stipulate that only "accused products" did not infringe, but there are no "accused products," then the Accused Products Clause would be meaningless. Goodman even admitted that

he intended for the Accused Products Clause to be meaningless, though the District Court did not rely on this admission. Appx6.

### 2. Products Accused of Indirect Infringement Are "Accused Products"

Goodman also appears to argue that that SMART's DDR2, DDR3, and DDR4 products are not accused because he now only alleges indirect infringement. This is both illogical and not supported by law.

Specifically, Goodman stated:

> Based on this Court's use of "accused products" *Tessera, In re Bill of Lading, and* [sic] *Lucent* and the District Court's understanding (*see* Appx28 quote above), it is not possible for the DDR2, DDR3, or DDR4 memory products to be the "accused products" because none of these memory products can fall within any of the patent claims of the '315 Patent.

Appx16–17. In support of his argument, Goodman provided the following legal foundation:

> This Court has held that the term "accused products" are the products identified by a patent holder as being infringed. *See Tessera, Inc. v. ITC*, 646 F.3d 1357, 1359 (5th Cir. 2011); *In re Bill of Lading, etc.*, 681 F.3d 1323, 1327 (5th Cir. 2012); *Lucent Tech., Inc. v. Gateway, Inc., et al.*, 580 F.3d 1301, 1309 (5th Cir. 2009).

Appx4.

There are countless problems with this argument, but at least two are fatal to Goodman's arguments. First, his statement is illogical

because products cannot be infringed – claims are infringed. 35 U.S.C. § 271. Second, and more importantly, the cases Goodman cites do not stand for the proposition for which Goodman relies. Specifically, nowhere in any of those opinions is there a discussion of products accused of indirect infringement not being "accused products."

In *Tessera*, for example, the Federal Circuit never used the terms "indirect," "contributory," or "inducement," or any version thereof. *Tessera, Inc. v. ITC*, 646 F.3d 1357 (5th Cir. 2011).

Further, in *Bill of Lading* and *Lucent*, and many other Federal Circuit decisions, the Federal Circuit routinely refers to products accused of indirect infringement as "accused products." *See*, *e.g.*, *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (5th Cir. 2012) ("**With respect to R+L's contributory infringement allegations**, the district court first noted that, to plead contributory infringement plausibly, R+L must allege facts supporting the conclusion that **the accused products** are not staple articles of commerce suitable for substantial noninfringing uses.") (emphasis added); *Lucent Tech., Inc. v. Gateway, Inc., et al.*, 580 F.3d 1301, 1320–21 (5th Cir. 2009) (assessing validity of induced infringement claims

against accused products); *Ricoh Co., Ltd. V. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008) **("[A] finding of inducement** requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that **the accused products** necessarily infringe.") (emphasis added).

Thus, even if Goodman could show that that the District Court somehow erred, his argument is completely unsubstantiated. This is unsurprising as he was admonished by the District Court for this exact behavior:

> The court agrees with Smart that there is very little legal citation or analysis in Goodman's motions. However, sanctions are discretionary under § 1927, and the court is not inclined to award sanctions ***at this time***. **The court, however, cautions Goodman's counsel to substantiate comment such as "The Fifth Circuit in Texas states that if a contract is unambiguous then the interpretations [sic] is confined to the four corners of the document" with citations in future filings**. See Dkt. 167 at 5 (making this statement about the law without citing to any legal authority).

Appx30–31 (emphasis added).

### 3. Goodman's Interpretation Is Inconsistent With The Facts

Despite Goodman's assertion that SMART's DDR2, DDR3, and DDR4 products are not "accused products" because he did not label

them as such, the facts of this case show that these products have been the focus of his infringement theory since he filed the complaint. *See* Section I(A). The District Court, in view of the record, agreed with SMART and determined that Goodman's argument was unreasonable. Appx5.

## II. The District Court Correctly Determined the Contract Was Unambiguous

Goodman also argues that the Settlement Term Sheet is ambiguous and therefore the Federal Circuit should remand the case to the District Court to construe "accused products" in a manner consistent with Goodman's interpretation.

Goodman's argument is meritless because he has failed to satisfy his burden to show that the Settlement Term Sheet is ambiguous as he has not shown that it is subject to two reasonable interpretations. *El Paso Field Servs.*, 389 S.W.3d at 806; *J.M. Davidson*, 128 S.W.3d at 229; *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782 (Tex. 2006); *XTO Energy*, 282 S.W.3d at 683 ("If both interpretations are reasonable, then the contract is ambiguous and there is a genuine issue of material fact regarding the parties' intent."). "A contract is not ambiguous simply

because the parties advance conflicting interpretations." *NuStar*, 402 S.W.3d at 466 (citing *Columbia*, 940 S.W.2d at 589).

Here, there is no dispute that SMART's interpretation is reasonable because it was adopted by the District Court and because Goodman did not argue that it was unreasonable.[2] Thus, the only dispute as to ambiguity is whether Goodman's argument is reasonable – it is not.

As discussed above, Goodman's interpretation is not reasonable for at least two reasons. First, Goodman's interpretation is unreasonable because it is contrary to the facts of the case. *See* Section I(A)-I(B). Specifically, Goodman's infringement theory from the outset of this litigation has focused on SMART's DDR2, DDR3, and DDR4 products and he has repeatedly stated that the products have no non-infringing uses. *Id.* The District Court recognized that this argument was "not reasonable" in its original decision. Appx5. Second, Goodman's interpretation is unreasonable as a matter of law because it

---

[2] To the extent Goodman could attempt to argue that SMART's position was unreasonable, it would undermine Goodman's argument that the Settlement Term Sheet is ambiguous because a contract is only ambiguous if it is subject to two reasonable interpretations. *See*, *e.g.*, *El Paso Field Servs.*, 389 S.W.3d at 806.

would render the clause meaningless. *See* Section I(c)(2); *Int'l Turbine*, 278 F.3d at 497; *Sadler Clinic*, 403 S.W.3d at 895 (citing *Italian Cowboy Partners*, 341 S.W.3d at 333).

## CONCLUSION

The district court's decision should be affirmed.

Respectfully submitted,

/s/ Michael F. Heafey

Michael F. Heafey
*Counsel of Record*
KING & SPALDING LLP
601 S California Avenue
Palo Alto, CA 94034
Telephone: (650) 422-6719
mheafey@kslaw.com

Timothy Caine
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone: (212) 556-2231
tcaine@kslaw.com

March 17, 2017

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25 and Federal Circuit Rule 25, I certify that on March 17, 2017, I caused a copy of the foregoing document to be served electronically on all registered counsel through the Court's CM/ECF system.

/s/ Michael F. Heafey
Michael F. Heafey

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7), I certify that this brief complies with the length limitations set forth in that rule because it contains 3,499 words, as counted by Microsoft Word, excluding the items that may be excluded.

/s/ Michael F. Heafey
Michael F. Heafey